[Civ. No. 18404. Second Dist., Div. Two. Dec. 3, 1951.]

WALTER COLLINS, as Administrator, etc., Appellant, v.
MARQUE NEAL, Respondent.

George W. Rochester and Chas. W. Rollinson for Appellant.

Crispus A. Wright for Respondent.

THE COURT.—This is an action to quiet title, establish a
trust and to partition real property held in joint tenancy.
From a judgment in favor of defendant, plaintiff appeals.
There is also a purported appeal from the order denying a
new trial.

The suit was originally instituted by Ivie Neal, also known as Ivie Anderson. Subsequent to the filing of the action she married Walter Collins. Before the cause could be brought to trial Ivie Anderson died and her husband was appointed administrator of her estate and was thereafter substituted as party plaintiff.

Plaintiff contends that the judgment is contrary to the evidence and against the law.

Defendant and Ivie Anderson entered into a purported marriage in Arizona on May 11, 1942. Ivie had been previously married to one William Johnson and at the time of her marriage to defendant, an interlocutory decree only had been entered in her divorce action against Johnson. She applied for and obtained a final decree of divorce from Johnson on December 4, 1942.

For some years prior to her marriage to defendant, Ivie Anderson had owned the property involved in this action. On March 5, 1946, she executed a joint tenancy deed, placing title therein in Marque C. Neal and Ivie Anderson Neal, husband and wife, as joint tenants. At about the same time two houses then on the premises were sold and removed and Ivie and defendant entered into a building contract for the erection of an apartment house. A down payment of $17,929 was made, the funds therefor having been withdrawn from their joint savings account, and a note for the unpaid balance secured by a trust deed was executed by Ivie and defendant. The furniture and furnishings were also paid for by monies withdrawn from the same joint account. After the building was completed rents received were deposited in that account and payments made on the trust deed note and on the purchase price of the furniture and monies for taxes and expenses were withdrawn from the joint account. Ivie and defendant separated in May, 1948, and on August 23, 1948, she obtained a judgment annulling their marriage.

Plaintiff asserts that all the monies used in the construction of the apartment house and in purchasing the furniture and furnishings were Ivie's separate property; that all funds deposited in the joint savings account were traceable to either the proceeds of the sale of her separate property or her earnings as a singer and entertainer; that the joint tenancy deed executed by Ivie to herself and defendant as husband and wife "was clearly made under a misapprehension or mistake of law as to her marriage status"; that she was "lead to believe" she was legally married to defendant and she relied

upon defendant's representations that they would have a valid marriage if they were married outside the State of California; that the filing of the instant action "establishes an incontrovertible intent from which no other conclusion can be drawn other than that Ivie would never have signed the joint deed had she known the true legal status of her marriage and separate property"; that the fact she sought and obtained an annulment creates an undisputed presumption that she thought she had been legally married to defendant; since she believed they were married at the time she executed the joint tenancy deed to herself and defendant as husband and wife, it must be presumed she would not have executed the deed had she known the marriage was invalid.

Defendant testified he first met Ivie Anderson in 1940; he came to California from New York in 1941, and in June, 1941, he opened a restaurant which was known as "Ivie's Chicken Shack"; he paid the rent and made the down payment on the fixtures with his personal funds, executing a note in the amount of $1,600 for the balance; he and Ivie maintained a joint savings account and he opened a commercial account which he used in the operation of the restaurant; he operated the restaurant until the latter part of November, 1944, when it was sold for $8,000 plus the inventory of between $500 and $600; the purchaser paid $5,000 into escrow and after the expenses were deducted there remained a balance of approximately $3,000 which he deposited in the joint account; thereafter the purchaser paid $400 a month on the balance of the purchase price plus interest, which was also deposited in the joint account; the restaurant showed a net profit in excess of $7,000 for the years 1943 and 1944; profits of the restaurant were reflected in both accounts; at various times he transferred funds from the commercial account to the joint savings account; Ivie Anderson was a professional singer; he acted as her manager and accompanied her on at least three tours; there were periods of time when she was not working; one year she worked only nine weeks and another but four weeks; at various times when she was on tour she sent home to him sums of money which represented her salary less her expenses and these sums were deposited in their joint account; there was also deposited in the joint account $2,700 representing the net proceeds from the sale of certain real property owned by Ivie, the sum of $3,100 received from the sale of the two houses which were moved, and $800 which was received from the sale of Ivie's automobile.

Defendant testified he did not tell either of the friends who accompanied Ivie and him to Arizona at the time of their marriage that he knew they could be married outside the State of California and the marriage would be valid, and they did not discuss that matter on the trip; he did not think there was anything illegal about the circumstances under which they were married; in their dealings with the construction company they represented themselves as husband and wife and during the negotiations Ivie inquired as to how she would be protected in case of defendant's death and Mr. Mendell said: "Well, a joint tenancy deed is about the best way under that. Under the state laws on joint tenancy if he died you would get it without any contest, and vice versa." She then signed the deed; they both read it before it was signed.

The office manager of the construction company testified the contracts and other papers were prepared under his supervision; that "when our title report came in showing it was in Ivie Anderson's name they settled between them it should be in both names."

Witness Sheffield testified he had a conversation with Ivie Neal regarding the joint tenancy deed; that they were "sitting at the dinner table and she mentioned the fact about how hard Neal was working in the restaurant and she felt that they should have a will drawn, and I mentioned the fact it wasn't necessary if they had a joint tenancy deed."

This evidence supports the finding of the court that defendant opened a restaurant known as "Ivie's Chicken Shack" with his personal funds and that he operated the restaurant from about June 13, 1941, until it was sold about November 20, 1944; that the proceeds from the sale thereof and profits from its operation were deposited in the joint savings account; that defendant did not represent to Ivie Anderson that if they went to Arizona and were married the marriage would be valid; that at the time Ivie Anderson executed the grant deed she intended to convey a joint tenancy interest to defendant and had full knowledge thereof; that defendant did not make any representations with the purpose and intent of defrauding and misleading Ivie Anderson so that she unknowingly vested title to the property in the name of herself and defendant as joint tenants.

 It is immaterial that in the deed defendant and Ivie Anderson are referred to as "husband and wife," whereas in fact their marriage was invalid, since the term was merely descriptive and surplusage. (*McWhorter* v. *McWhorter*, 99

Cal.App. 293, 295 [278 P. 454].) ▬ The presumptions cited by plaintiff merely create a conflict in the evidence and the trial court having decided such conflict in defendant's favor its determination must be accepted as conclusive by this court.

Judgment affirmed. Purported appeal from order denying new trial dismissed.